JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

18 3188

**(b)** County of Residence of First Listed Plaintiff  chester
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  chester
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
robert J. Birch, Esquire
617 Swede Street
Norristown, PA 19401

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS- Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983

Brief description of cause:
false arrest

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE 7/26/2018

SIGNATURE OF ATTORNEY OF RECORD

JUL 27 2018

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
 (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
 (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**   18      3188

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 320 Prospect Avenue Clifton Heights PA

Address of Defendant: 101 Commerce Drive Exton PA

Place of Accident, Incident or Transaction: Chester County

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/26/2018    _____    65816
                   *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

A. **Federal Question Cases:**
1. Indemnity Contract, Marine Contract, and All Other Contracts
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Patent
6. Labor-Management Relations
7. Civil Rights ☑
8. Habeas Corpus
9. Securities Act(s) Cases
10. Social Security Review Cases
11. All other Federal Question Cases
    *(Please specify)* _____

B. **Diversity Jurisdiction Cases:**
1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify)* _____
7. Products Liability
8. Products Liability – Asbestos
9. All other Diversity Cases
   *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Robert J Birch, counsel of record or pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 7/26/2018    _____    65814
                   *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

JUL 27 2018

Civ 609 (5/2018)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| CHARLES BURDSALL | : | CIVIL ACTION |
| v. | : | **18    3188** |
| WEST WHITELAND TOWNSHIP | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                           ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.      ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                                              ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court. (See reverse side of this form for a detailed explanation of special
   management cases.)                                                                                 ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                  (xx)

| | | |
|---|---|---|
| 7/24/2018 | [signature] | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-277-9700 | 610-277-2043 | robert@robertbirchlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JUL 27 2018

#4002 PBT

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES BURDSALL<br>320 Prospect Avenue<br>Clifton Heights, Pennsylvania 19018<br>    PLAINTIFF<br>          v<br>WEST WHITELAND TOWNSHIP<br>101 Commerce Drive<br>Exton, PA 19341<br>    And<br>WEST WHITELAND POLICE DEPARTMENT<br>101 Commerce Drive<br>Exton, PA 19341<br>    and<br>OFC. LEAH M. CESANEK<br>101 Commerce Drive<br>Exton, PA 19341<br>    and<br>BULLDOG ROD & CUSTOM, LLC<br>255 S. Whiteford Road<br>Exton, Pennsylvania 19341<br>    DEFENDANTS | **18    3188**<br><br>: Civil Action No.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>: JURY TRIAL DEMANDED |

## COMPLAINT
### NATURE OF THE ACTION

1.    Plaintiff was wrongfully prosecuted by the defendants, Ofc. Leah M. Cesanek, and the West Whiteland Police Department, under color of law in violation of the Federal Civil Rights Statute 42 U.S.C §1983 and the Pennsylvania State Constitution. Plaintiff was falsely charged with theft of services, receiving stolen property, and trespass, initiated by an affidavit of probable cause which the defendants knew or should have known was based on false information, and was the result of an attempt to charge Plaintiff for a crime which Defendants knew or should have known that plaintiff did not commit, had no intention to commit, or agreed to commit. The case against plaintiff was dismissed upon Petition for Habeas Corpus brought in

1

the Chester County Court of Common Pleas. The Petition was granted as there was no probable cause to charge Plaintiff with the above crimes. Plaintiff brings this action under the Federal Civil Rights Statute, the Pennsylvania State Constitution and related common law counts. He seeks compensatory and punitive damages for the acts alleged herein.

## PARTIES

2. Plaintiff Charles Burdsall is an individual, citizen and resident of the Commonwealth of Pennsylvania, residing at 320 Prospect Avenue, Clifton Heights, Pennsylvania.

3. West Whiteland Township is, and at all times relevant herein was, a political subdivision organized and existing under the Pennsylvania Second Class Township Code, 53 P.S. §§ 65101 et seq., with offices at 101 Commerce Drive Exton, PA 19341.

4. Defendant, Ofc. Leah M. Cesanek is an individual, citizen and resident of the Commonwealth of Pennsylvania. At all times material hereto, Leah M. Cesanek was an Officer with the West Whiteland Township Police Department.

5. Defendant William M. Little ("Little") is an individual, citizen and resident of the Commonwealth of Pennsylvania with an address at 222 S. Whiteford Road, Exton, Pennsylvania.

6. Little is the owner of Bulldog Rod & Custom, LLC, 255 S. Whiteford Road, Exton, Pennsylvania ("Bulldog").

7. At all times material hereto, Little was acting individually and as an agent for Bulldog.

2

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the Federal Civil Rights Count claim set forth in Count I pursuant to 42 U.S.C. §1983. The remaining claims are pendent thereto.

9. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. 1391(a) because defendants reside in the Eastern District of Pennsylvania and a substantial part of the events giving rise to this lawsuit occurred in the Eastern District of Pennsylvania.

## BACKGROUND FACTS

10. Plaintiff is the owner of an antique show car 1976 Ford Gran Torino (the "Ford").

11. During the first weekend of June of 2015, Plaintiff was returning from a national car show when his right front tire blew, damaging the inner and outer right front fenders, moldings, and chrome.

12. Plaintiff made a claim to his insurance company, American Collectors Insurance Company ("American").

13. In April of 2016, Plaintiff took the Ford to Bulldog for an estimate.

14. Until April 2016, the Ford was kept in a locked garage as required by Plaintiff's insurance company.

14. Plaintiff was informed by Bulldog's employee, Jim Seiple, that Seiple would discuss the amounts for repair work to the Ford with Plaintiff's insurance company. Accordingly, Plaintiff left the Ford at Bulldog.

15. On or about June 4, 2016, Plaintiff was able to secure authentic parts for the Ford at Carlisle Ford National. Plaintiff took the original fenders to Bulldog and Plaintiff and Seiple agreed that Bulldog would paint both the interior and exterior of both fenders.

16. Plaintiff, however, never received a written estimate for the work to be performed.

17. Between April 23, 2016 and May 30, 2016, two replacement fenders were located. Bulldog was asked by the insurance adjuster to sandblast the fenders due to intensive rust. Because of the irreparable rusted condition of the fenders, they were unacceptable for a show vehicle.

18. From April to June 2016, the Ford remained at Bull Dog.

19 During the latter part of May, Seiple gave Plaintiff a verbal estimate of $1,200 for additional items that could be performed. Plaintiff thought that the price was too high and that Bulldog was not doing was it was asked to do. For example, Bulldog wanted to tape the pinstripe rather than painting the pinstripe onto the car.

20. On or about June 4, 2016, Plaintiff was able to secure authentic parts for the Ford at Carlisle Ford National.

21. During the week of June 6, 2016, the original fenders for the Ford were taken to Bulldog. Seiple agreed that Bulldog would paint both the interior and exterior of the fenders, polish and take dents out of the chrome. This, however, never happened.

22. During the last week of June 2016, Plaintiff came back to Bulldog and saw that work had already started on the Ford, and Plaintiff saw that the work was not being done to his satisfaction. For example, the new paint stripe applied on the repaired side of the Ford was one inch lower than the stripe on the side not damaged, and the fenders showed rust. Further, the paint showed spots where taping had been placed on areas to be painted.

23. In addition, Bulldog began the additional work that it quoted for $1,200 that Plaintiff never authorized. Plaintiff informed Seiple that the quality of work was unacceptable, and not acceptable for a show quality vehicle. Plaintiff requested that the issues be corrected.

24. Also, at this point, Plaintiff had received 3 checks from his insurance company for the vehicle repairs. These checks, totaling $3,197, were offered to Seiple, and in the presence of Barbara, another employee of Bulldog. Plaintiff asked Bulldog to give him a written estimate for all the repairs to his vehicle, and an accounting for the three insurance checks. Seiple told Plaintiff to hold onto the checks and that he was working with Plaintiff's insurance company.

25. During the time that the Ford was at Bulldog, Plaintiff noticed the Ford was sitting outside on Bulldog's lot, in excessive weather conditions, such as the intense summer heat. The weather conditions greatly affected the exterior paint, and the integrity of the interior, specifically the dashboard. Because of Bulldog's negligence, the wheels of the vehicle, which are polished aluminum, incurred some damage from the rain, dirt, weather conditions. These wheel now require professional polishing.

26. Between July 1, 2016 and July 20, 2016, Plaintiff spoke to another Bulldog employee, Bill, and was finally given an invoice from Bulldog for the $1,200 of work that Plaintiff had never authorized. In addition, Bill presented another invoice for $1,600 that Seiple put on the Ford without any prior authorization. Bill advised Plaintiff that he was being charged 20 man-hours for extra time spent on the Ford.

27. Plaintiff also noted that the new pin striping that Bulldog taped was coming off the vehicle.

28. On July 25, 2016, Plaintiff spoke to Seiple, who advised that the insurance company was sending Bulldog a supplemental payment of $900.

29. Moreover, on July 26, 2016, Seiple emailed Plaintiff and advised that Plaintiff's insurance had covered $4,032.46 of the work, and that the remaining amount due to Bulldog was $1,945.12.

30. On July 27, 2016, Plaintiff spoke to Barbara, advising her that he would deposit the insurance checks and would have a check to Bulldog for the remaining amount by July 29, 2016.

31. Plaintiff emailed Seiple on July 27, 2016, and advised that he had spoken to Barbara and that that he had picked up his car and that he would have the check to Bulldog by Friday.

32. Plaintiff was never advised by any employee of Bulldog that he was not to take the Ford or that what he had done was unacceptable.

33. Unknown to Plaintiff, on July 27, 2016, Bulldog called the police and reported the Ford stolen.

34. On July 28, 2016, Defendant Seznick, from the West Whiteland Police Department called Plaintiff and stated she wanted to talk about the car. When Plaintiff queried what was the issue, Defendant Seznick advised Plaintiff that Bulldog reported the Ford as stolen.

35. Defendant Seznick told Plaintiff that she had all the emails and was aware that Plaintiff had picked up his car and was bringing the insurance checks to Bulldog by Friday.

36. Defendant Seznick specifically told Plaintiff that as long as the checks that he had were at Bulldog by that date, then there would be no problem. Defendant Seznick stated to Plaintiff that he would not hear from her unless he failed to comply with her instructions.

37. On the evening of July 28, 2016, Plaintiff put the insurance checks in his possession into the key slot at Bulldog, and these checks were in Bulldog's possession by July 29, 2016, as affirmed by Bill Little of Bulldog.

38. Further, Bulldog intentionally failed to deposit the checks that were in its possession on July 29, 2016. The checks were not deposited until sometime in August of 2016.

39. Notwithstanding this, and in complete disregard of her conversation with Plaintiff, on Saturday, August 6, 2016, Defendant Seznick left a message for Plaintiff that felony warrants had been issued for his arrest *even though Bulldog was paid as agreed*.

40. The Affidavit of Probable Cause in support of the Criminal Complaint that was submitted to the District Justice contained numerous false and misleading statements, which Defendants knew or should have known to be false. Such false and misleading statements included, but were not limited to:

   a) That Plaintiff trespassed on Bulldog's property even though Defendant Seznick had an email from Bulldog to Plaintiff that stated "thanks for stopping by";

   b) That Plaintiff knew that he was not to trespass on Bulldog's property;

   c) That Plaintiff did not pay for services by deception or threat;

   d) That Plaintiff had not paid anything for the Ford

   e) That Plaintiff received stolen property

41. In crafting such Affidavit to institute criminal charges against Plaintiff, the defendants deliberately ignored various pieces of exculpatory evidence such as the email and payments to Bulldog, and intentionally excluded this from the Affidavits.

42. Moreover, defendants completely fabricated that Plaintiff had actual notice not to trespass on Bulldog's property.

43. Despite this substantial exculpatory evidence and the clear evidence that Plaintiff had no intent to commit theft, Defendants proceeded to charge the Plaintiff with serious felonies.

44. Plaintiff suffered damages including but not limited to loss of liberty by the wrongful arrest, out of pocket losses a including attorney fees and other monetary harm, impairment of his reputation, personal humiliation, mental anguish and related suffering.

45. Upon Petition to the the Court of Common Pleas of Chester County, all charges against Plaintiff were immediately dismissed as Defendants failed to establish any probable cause for Plaintiff's arrest.

## COUNT I
## VIOLATION OF CIVIL RIGHTS -42 U.S.C. 1983

### PLAINITFF V. OFC. LEAH M. CESANEK AND WEST WHITELAND TOWNSHIP AND WEST WHITELAND POLICE DEPARTMENT

46. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

47. Defendants acting under color of state law, caused the prosecution and arrest of Plaintiff.

48. In bringing such charges based upon the Probable Cause Affidavit, with the misrepresentations and omissions therein as set forth above, the defendants acted in a negligent, reckless and deliberate manner such as to violate Plaintiff's Fourth Amendment rights prohibiting arrest and prosecution without probable cause.

49. As a direct result of the illegal arrest and prosecution, Plaintiff sustained the following damages:

    (a)    loss of liberty;

    (b)    out of pocket expenses including his attorney fees;

(c) other monetary harm including loss of plaintiff's employment and the income and profits to be derived therefrom;

(d) impairment of his reputation, personal humiliation, mental anguish and suffering.

50. As a result of their deliberate and reckless disregard for Plaintiff's constitutional rights, Defendants should be held responsible for punitive damages.

WHEREFORE, judgment should be entered in favor of Plaintiff and jointly and severally against Defendants for compensatory damages, punitive damages, attorney fees, pre-judgment and post-judgment interest and such other costs as the Court deems just and appropriate.

## COUNT II VIOLATION OF RIGHTS INSURED BY THE PENNSYLVANIA CONSTITUTION ARTICLE I SECTION 8

## PLAINITFF V. OFC. LEAH M. CESANEK AND WEST WHITELAND POLICE DEPARTMENT

47. Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein..

48. Defendants violated Plaintiff's rights to be secure in his person, house, papers and possessions from unreasonable searches and seizures as set forth in Article I Section 8 of the Pennsylvania Constitution by unlawfully, and with malicious purpose, initiating criminal proceedings against Plaintiff and detaining him without probable cause as more fully set forth above.

49. As a direct result of their illegal arrest and prosecution in violation of Article I Section 8 of the Pennsylvania Constitution, Plaintiff sustained the following damages:

(a) loss of liberty;

(b) out of pocket expenses including his attorney fees;

(c) other monetary harm including loss of plaintiff's employment and the income and profits to be derived therefrom;

(d) impairment of his reputation, personal humiliation, mental anguish and suffering.

50. As a result of their deliberate and reckless disregard for plaintiff's constitutional rights, defendants should be held responsible for punitive damages.

WHEREFORE, judgment should be entered in favor of Plaintiff and jointly and severally against Defendants for compensatory damages, punitive damages, attorney fees, pre-judgment and post-judgment interest and such other costs as the Court deems just and appropriate.

## COUNT III
## FALSE ARREST

### PLAINITFF V. OFC. LEAH M. CESANEK AND WEST WHITELAND TOWNSHIP AND WEST WHITELAND POLICE DEPARTMENT

51. Plaintiff incorporates by reference the allegations in paragraphs as if fully set forth herein.

52. As set forth above, the Defendants intentionally caused the false arrest of the Plaintiff by obtaining a criminal complaint based upon an Affidavit of Probable Cause which the Defendants knew or should have known to be based on false and inaccurate information.

53. As a result of the false arrest of Plaintiff, Defendants are responsible to Plaintiff for all harm caused by said arrest as set forth in paragraphs 42 through 45 of this complaint.

54. For their deliberate and intentional acts in presenting a false and misleading Affidavit of Probable Cause to the District Justice, Defendants are further liable to Plaintiff for punitive damages.

WHEREFORE, judgment should be entered in favor of Plaintiff and jointly and severally against Defendants for compensatory damages, punitive damages, attorney fees, pre-judgment and post-judgment interest and such other costs as the Court deems just and appropriate.

## COUNT IV
## ABUSE OF PROCESS

### PLAINITFF V. OFC. LEAH M. CESANEK AND WEST WHITELAND TOWNSHIP AND WEST WHITELAND POLICE DEPARTMENT

55. Plaintiff incorporates by reference the allegations above as if fully set forth herein.

56. As set forth above, Defendants did employ legal process to accomplish a purpose for which it was not designed; to charge an innocent man in a crime.

57. As such, these actions constitute the common law tort of abuse of process for which Defendants are liable to Plaintiff for compensatory and punitive damages.

WHEREFORE, judgment should be entered in favor of Plaintiff and jointly and severally against Defendants for compensatory damages, punitive damages, attorney fees, pre-judgment and post-judgment interest and such other costs as the Court deems just and appropriate.

## COUNT V

### PENNSYLVANIA UNFAIR TRADE PRACTICES ACT AND CONSUMER PROTECTION LAW, 73 PA. C.S.A. §201.1 *ET SEQ.*

### PLAINTIFF v. BULLDOG

58. Plaintiff incorporates by reference the allegations above as if fully set forth herein.

59. Bulldog is subject to the prohibitions of the Pennsylvania Unfair Trade Practice and Consumer Protection Law as more fully set forth at 73 P S §201-1, *et seq.*

60. Bulldog, through its agent, Little, presented false reports and evidence to the police in order to concoct a story that Plaintiff stole his own vehicle and was not paying for services.

61. During the hearing before the District Justice, Bulldog admitted that it had the insurance checks on July 29, 2016, and upon information and belief, failed to disclose the checks to the police.

62. Further, during the hearing before the District Justice, Bulldog admitted that it had the email from Plaintiff that advised that the additional checks were forthcoming, and upon information and belief, failed to disclose the checks to the police

63. Such conduct violated the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law causing damages to Plaintiff As a result of the conduct and misrepresentations of Mavis as aforesaid, Plaintiff is entitled to recover an award up to three times the actual damages sustained by Plaintiff.

Pursuant to 73 P. S. §201-9.1, Plaintiff is entitled to such additional relief as may be deemed necessary or proper as a result of the conduct of Bulldog and Little.

WHEREFORE, Plaintiff seeks judgment in his favor for damages in excess of $75,000, plus punitive damages, interest, costs and reasonable attorney's fees; and such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted:

*Robert J. Birch*

**July 26, 2018**

ROBERT J. BIRCH, ESQUIRE
617 Swede Street
Norristown, PA 19401
610-277-9700

12