IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                        |   |                |
|----------------------------------------|---|----------------|
| CHARLES BURDSALL,                      | : |                |
|                                        | : |                |
| Plaintiff,                             | : | CIVIL ACTION   |
|                                        | : |                |
| v.                                     | : | NO. 18-3188    |
|                                        | : |                |
| WEST WHITELAND TOWNSHIP, et al.,       | : |                |
|                                        | : |                |
| Defendants.                            | : |                |

**MEMORANDUM**

**TUCKER, J.**                                          **August 11, 2021**

      Before the Court is Defendant Leah Cesanek's Motion for Summary Judgment (ECF 42). Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Defendant's motion is granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

      This case stems from an auto repair dispute gone particularly sour. Charles Burdsall, the owner of a general contracting company, owned a 1976 Ford Gran Torino similar in appearance to the car featured in the seventies-era television program *Starsky & Hutch*. Pl.'s Mem. Opp'n 2 (ECF 43-4). The car needed repairs after its tire blew out on a highway in June 2015. Burdsall was unable to find parts to repair the car himself, and started to look for estimates in March 2016. Around the same time, he also filed an insurance claim for the damage to his car. After getting an initial estimate from a different repair shop, Burdsall went to Bulldog Rod & Custom,

---

[1] This section primarily draws from Defendant's Statement of Undisputed Facts in her Motion for Summary Judgment (ECF 42). Where there are disagreements, Plaintiff's "Counterstatement of Material Facts" in the Memorandum of Law opposing summary judgment (ECF 43-4) will be cited.

where he spoke to owner William Little and an employee, Jim Seiple. The two told him to leave the car there while a price was negotiated with the insurance adjuster.

Negotiations with the insurance adjuster would prove to be labored. The adjuster located one fender, but it was of insufficient quality. Then Burdsall brought his own fender, but realized it also was not up to the job. Bulldog charged Burdsall for the effort of checking fender quality, but Burdsall believed his insurance was paying for that service.

In June 2016, a friend of Burdsall found him an appropriate fender, which he brought to Bulldog for sandblasting. At this point, Burdsall was still waiting on an estimate from the shop for the overall repair cost. Burdsall spoke to Seiple, who said that the shop was working on his car, it was "all apart", and there was no estimate for the work. Burdsall did receive a verbal estimate of $1200 for non-fender work. New fenders were put on the car, but Burdsall did not appreciate the quality of the work and expressed concern to Little about the lack of an estimate for the fenders. However, Burdsall never told Bulldog to stop working on his car.

On July 27, 2016, Burdsall took his vehicle off of Bulldog's property before paying the bill for the services provided, or confirming with his insurance adjuster that the insurance paid for the services provided. He also purportedly failed to give notice to Bulldog before driving off the lot. At this point, a July 26, 2016 email showed Burdsall owed $1,945.12 in services rendered, and the insurer owed $4,032.46. Burdsall contends that Little and Seiple acknowledged that the insurance company was paying for at least some portion of the repair work. Plaintiff also contends that he called and emailed to say he was picking up the car, and that he informed Little he would drop off insurance checks to pay for the repairs. Pl.'s Mem. Opp'n 2.

As a result, Little called the police. On July 27, 2016, Officer Leah Cesanek of the West Whiteland Township PD filed an incident report in response to the call, via telephone. Cesanek

called Burdsall the next day. The police report describes Burdsall as aggressive; he seemed to think the call was a prank. Cesanek told Burdsall on the call that if he did not pay for the repairs by July 29, he would be charged with theft of services. In a supplemental report, Cesanek stated Burdsall admitted to driving the vehicle off the premises. Little spoke to Cesanek and told her he was owed about $5,000 from Burdsall. Little also told Cesanek that he warned Burdsall not to enter the Bulldog property without permission.

On July 28, Burdsall placed the insurer checks in Bulldog's mailbox. Burdsall did not know the value of the checks and stated that he was waiting on another check from the insurer. He did not tell Cesanek that he had given the insurer checks to Bulldog, and he did not pay the portion of the bill personally owed by the "deadline" Officer Cesanek had given.

On July 29, Cesanek received confirmation from a colleague that Burdsall did not pay in full the services he received from Bulldog. On August 5, 2016, Cesanek filed a criminal complaint charging Burdsall with felony theft of services and receipt of stolen property for the $5,977.46 unpaid balance. Burdsall was also charged with defiant trespass. Cesanek relied on Little's statements that he did not have any contact with Burdsall and that the customer still owed him money when writing the complaint. Little failed to mention to Cesanek that he received insurance checks from Burdsall.

An arrest warrant was issued on August 5, and the next day Cesanek told Burdsall that he had an active felony arrest warrant. Little did not tell Cesanek about the insurance check payments until August 24, 2016.

Burdsall retained an attorney and was processed at the district judge's office after turning himself in. He was not handcuffed, placed in a holding cell, or frisked for weapons. He appeared before a judge for arraignment and was there for about one hour. The matter was continued.

After the arraignment, Burdsall was processed, fingerprinted and photographed, but not placed in a holding cell, handcuffed or otherwise restrained. Burdsall subsequently went home.

Burdsall had a preliminary hearing after processing, where he was also not handcuffed. Before the day of the hearing, but after the July 29, 2016 deadline, Burdsall paid for the portion of work he personally owed. At the preliminary hearing, the judge found probable cause and the case advanced to the common pleas level. Burdsall terminated his previous attorney and hired a new one, who filed a successful motion to dismiss the charges.

Burdsall filed this lawsuit against Cesanek as well as West Whiteland Township and its police department, Bulldog Rod and Custom, and William Little on July 27, 2018. Many of the counts against West Whiteland Township and the West Whiteland Police Department were dismissed in a May 28, 2019 order. Additional counts against West Whiteland Township, Bulldog Rod & Custom, and William Little were dismissed in an April 28, 2020 order. Leah Cesanek filed a Motion for Summary Judgment on the remaining claims on November 9, 2020.

## II.    LEGAL STANDARD

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

III.  **DISCUSSION**

In a world where qualified immunity was a weaker doctrine or did not exist, Plaintiff Burdsall's challenge of the evidence Officer Cesanek relied upon for probable cause could raise a jury question. For better or for worse, we do not live in that world. Therefore, because Officer Cesanek reasonably, if possibly incorrectly, found probable cause to charge Burdsall, summary

judgment must be granted in her favor. This opinion will first discuss the dueling claims over probable cause in this case, then explain why qualified immunity applies.

### A. Probable Cause is Disputable

Plaintiff contends that the arrest warrant against him, prepared by Officer Leah Cesanek of the West Whiteland Police Department, was not supported by probable cause. As a result, he argues, his arrest for theft of services on his classic car constituted a false arrest in violation of his rights under the Fourth Amendment, forming a basis for a proper claim under 42 U.S.C. § 1983.

A claim of false arrest is based on a contention that an arrest was made without probable cause in violation of the Fourth Amendment. *Butler v. City of Philadelphia*, No. CIV.A. 12-1955, 2014 WL 4652276, at *2 (E.D. Pa. Sept. 17, 2014). Probable cause exists for an arrest where "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The existence of probable cause is crucial to both a claim for false arrest and a claim for malicious prosecution. A false arrest claim requires a plaintiff establishing (1) they were arrested, and (2) the arrest lacked probable cause. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3rd Cir. 2012). To demonstrate malicious prosecution, a plaintiff must show, among other elements, that (1) the proceeding started without probable cause, and (2) they suffered a deprivation of liberty constituting a seizure because of the legal proceeding brought against them. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). In analyzing probable cause for the purposes of either type of claim, the crime for which a suspect is

eventually charged is irrelevant, and evidence "insufficient to establish guilt at trial" may still provide for a reasonable arrest. *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994).

In disputing the validity of probable cause, Burdsall points to the fact that she based her decision to arrest him on one telephone call with William Little, the owner of Bulldog Rod & Custom. Despite this call, before obtaining the arrest warrant Cesanek had in her possession information that Plaintiff had told Little he was taking the car, that Little was working with Burdsall's insurer, that insurance checks were part of the payment for the services, and that he was never told not to enter the auto repair shop's property. In relying on this single phone call, Plaintiff contends that Cesanek relied on "mere suspicion" of a crime, which "is not enough for probable cause." *Eckman v. Lancaster City*, 529 F. App'x 185, 186 (3d Cir. 2013).

Cesanek, in her bid for summary judgment, contends that probable cause did exist for each of the charges Burdsall faced; theft of services, receiving stolen property, and criminal trespass. Though her investigative practices were questionable, the Court agrees that Cesanek had enough probable cause to qualify for immunity in this instance.[2]

*Theft of Services*

Theft of services under Pennsylvania law is defined as an individual obtaining services for themselves or another individual "which he knows are available only for compensation, by deception or threat . . . or by false token or other trick or artifice to avoid payment for the service." 18 Pa. Stat. Ann. § 3926(a)(1). Cesanek contends that probable cause existed for this charge because Burdsall owed $5,000 for services rendered, had not paid this amount by the July 28, 2016 deadline, and that Burdsall had taken his repaired vehicle without paying for the services. Mot. Summ. J. 6 (ECF 42). This full amount was not paid until after the arrest and

---

[2] *See infra* section III.B for discussion of qualified immunity.

Little did not tell Cesanek Burdsall had settled some of the bill through insurance payments. Cesanek contends that there is no claim she fabricated any information in the arrest warrant, and that she relied on the true statements of Little. *Id.* For these reasons, she argues the theft of services charge was backed by probable cause.

*Receiving Stolen Property*

Theft is defined in Pennsylvania law as when one "intentionally receives [possession or control of] . . . property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa. Stat. Ann. § 3925. Cesanek contends that probable cause existed for this charge because she had received facts that the vehicle was supposed to be repaired by Bulldog and that without the repair shop's knowledge or a statement that he would pay for the services, Burdsall took his car off the lot. Mot. Summ. J. 7. On this basis, she argues the receiving stolen property charge was backed by probable cause.

*Criminal Trespass*

Criminal trespass is defined in Pennsylvania law as when someone "knowing that he is not licensed or privileged to do so . . . enters . . . any building or occupied structure or separately secured or occupied portion thereof." 18 Pa. Stat. Ann. § 3503(a)(1)(i). Cesanek contends that probable cause existed for this charge because Little informed her that he warned Burdsall not to enter the property as their relationship deteriorated due to the disputed payment for the body work. Mot. Summ. J. 7. Despite this warning, Burdsall entered the property to take his car. Cesanek also notes that in communications Burdsall "was combative and failed to articulate a proper defense", and did not mention that he tried to pay Bulldog. *Id.* On this basis, she argues the criminal trespass charge was also backed by probable cause.

8

On all three counts, Cesanek also notes that at arraignment a judge agreed the theft of services and receiving stolen property charges were sufficient to continue based on the probable cause presented. *Id.* at 7-8.

*Problems with the Alleged Probable Cause*

In a situation where someone is arrested on a valid warrant, a court conducts a probable cause analysis to determine whether the affidavit provided "sufficient basis for the decision the magistrate judge actually made." *Giddens v. Stewart*, No. 20-CV-01474, 2021 WL 3100188, at *4 (E.D. Pa. July 22, 2021) (quoting *United States v. Jones*, 994 F.2d 1051, 1058 (3d Cir. 1993)). Therefore, a plaintiff must allege facts that can show (1) "the officer, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant", and (2) "those assertions or omissions were material, or necessary to the finding of probable cause." *Id.* (quoting *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017)). Reckless disregard is demonstrated when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth or his statements or had obvious reasons to doubt the accuracy of the information he reported." *Andrews*, 853 F.3d at 698 (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)).

Despite this seemingly solid evidence of probable clause, when looked at even slightly closely, grounds for Cesanek's arrest look much shakier—there are multiple potentially material omissions in this case. Cesanek by her own admission relied on just one phone call to gather the evidence used to charge Burdsall on all three counts. Def.'s Statement of Undisputed Facts ¶¶ 28-30. Despite this call, before she obtained the arrest warrant she had emails between Burdsall and Jim Seiple of Bulldog, which confirmed that the auto repair shop had been communicating with Burdsall, and that they knew insurance money was going to pay for part of the repair work.

9

Opp'n Mot. Summ. J. Ex. B, C4—WWPD Incident Report July 28, 2016 (ECF 43-2 at 21-22). Burdsall also left a message with a Bulldog employee the day he took the car. *Id*. By the point Cesanek obtained the arrest warrants, Little had the insurance checks and had cashed them, as specifically stated on her report. Opp'n Mot. Summ. J. Ex. B, C5—WWPD Incident Report July 29, 2016 (ECF 43-2 at 24). Cesanek did not reach out to Seiple, or Barbara, another employee of Little that Burdsall was in communication with, as to the status of the checks. Opp'n Mot Summ. J. 5. Because Cesanek never bothered to check on the status of the insurance checks, she never learned that the alleged amount outstanding was less than the $2,000 threshold under Pennsylvania law for felony charges. *Id.* at 7. Because of this, her actions led to Plaintiff being prosecuted for felony theft as to the full $5,977.46. *Id.* at 9. Each of these elements goes to accuracy concerns about the criminal complaint, and to the question of whether this should have been a criminal proceeding in the first place.

"When an officer submits a sworn affidavit of probable cause, he or she 'is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" *Andrews*, 853 F.3d at 699 (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016)). This concept exemplifies the problem with Cesanek's claim of probable cause: too much exculpatory evidence is ignored to justify Burdsall's arrest. However, despite the dubious level of probable cause in this case, qualified immunity is enough to bail Officer Cesanek out of the remaining claims in this lawsuit.

### B. Officer Cesanek Reasonably Concluded There was Probable Cause and Therefore Can Claim Qualified Immunity

Under prevailing Supreme Court precedent, police officers are entitled to qualified immunity under § 1983 "unless (1) they violated a federal statutory or constitutional right, and

(2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The "clearly established" element means that the legal principle at issue must "clearly prohibit the officer's conduct in the particular circumstances before him". *Id.* at 590. This specificity has particular importance in the Fourth Amendment context, as the imprecision of the probable cause standard means "officers will often find it difficult to know how the general standard . . . applies in 'the precise situation encountered.'" *Id.* (quoting *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1866 (2017)). This means that for Burdsall's claim to avoid the expansive reach of qualified immunity doctrine, save for "the rare obvious case", the weight of "existing precedent must place the lawfulness of the particular arrest beyond debate", as officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity. *Id.*; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). In evaluating if an arrest had sufficient probable cause, we must objectively evaluate "the facts available to the officers at the moment of arrest." *Damico v. Harrah's Philadelphia Casino & Racetrack*, 674 F. App'x 198, 201 (3d Cir. 2016) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994))

      In this situation, the lawfulness of the arrest is—unfortunately for Burdsall's claim—not beyond debate. The circumstances Cesanek was confronted with include a disputed business transaction, an apparent refusal to pay for services from a defiant customer, and proof that at least some portion of the amount due was not paid. The officer, relying on Little, had the following facts: "(1) Burdsall owed over $5,000 in services performed on his vehicle, (2) Burdsall failed to pay the $5,000 in full by the deadline, and (3) Little forewarned Burdsall not to enter the property but Burdsall failed to listen and took his vehicle off the property." Def.'s Mot.

Summ. J. 10. Both players in this situation did not reach out to update Cesanek as to the partial payment, even though they had spoken to her prior to Burdsall's arrest. *Id.*

To show probable cause was lacking to a degree sufficient to overcome qualified immunity, Burdsall should be able to identify at least one precedent, and ideally "a controlling case or robust consensus of cases—finding a Fourth Amendment violation 'under similar circumstances.'" *Wesby*, 138 S. Ct. at 591 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Plaintiff instead cites out of circuit precedent with substantially different facts in support of his position.

The first precedent he points to is *Gregory v. City of Louisville*. 444 F.3d 725 (6th Cir. 2006). In that case, police investigating a pair of attempted rapes showed a witness a photo set that included the plaintiff; the witness made no identification, and then identified a different person's photo. *Id.* at 731. At a preliminary hearing after the plaintiff's arrest, one of the investigating officers said the witness had identified the plaintiff twice, and on cross examination admitted the witness failed to pick the plaintiff out of the photo array—but did not mention the witness had actually picked someone else entirely. *Id.* at 732. The court ruled the failure to tell the judge at the preliminary hearing that the witness had actually selected someone else out of the photo array, combined with the officer's claim that the witness' description of the attacker— described as a stocky build, 5 foot 6 inch man—matched the plaintiff, a 5 foot 11 ½ inch man with a different hairstyle, was "so contrary to the facts known to him at the time that this statement was a material misrepresentation to the court." *Id.* at 759. This sits in marked contrast to Cesanek's actions, where there is no serious question of police deception.

Plaintiff also cites to *Whatley v. Melton*, though without a real comparison of the case to the facts at hand. No. CIV.A. H-13-3735, 2015 WL 2453007 (S.D. Tex. May 22, 2015). In

*Whatley*, the plaintiff alleged unconstitutional arrest because the officer—investigating an allegation that plaintiff sent harassing sexually explicit texts to a colleague—failed to verify the phone number from where the texts came, did not look at the offending phone, and did not consider the toxic personal history between the plaintiff and the accuser. *Id.* at *6. However, in this case cited by Plaintiff, the court *granted the police officer summary judgment* on qualified immunity grounds, ruling, "Plaintiff has failed to demonstrate a genuine issue of material fact that a reasonable officer in [defendant's] position could not have concluded that probable cause existed". In making this ruling, the court reiterated that "the standard for probable cause is a 'fair probability,'" which is under fifty percent. *Id.* This is notable because the facts of that case truly resemble this one; incomplete but not mendacious police practices in an attempt to investigate a relatively minor crime.

Plaintiff barely addresses the qualified immunity argument, mentioning the term just once in his whole brief. While the conduct of Officer Cesanek can be second guessed, Plaintiff is unable to muster any judicial precedent where, on this or a similar set of facts (i.e. an officer making a questionable finding of probable cause without willful deception), a court declined to apply qualified immunity. Therefore, despite whatever concerns the conduct in this case might raise, this Court is compelled to grant summary judgment.

### IV.     CONCLUSION

For the foregoing reasons, summary judgment for Defendant is granted. An appropriate order follows.